IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01907-SKC-CYC

BENJAMIN DOUGLAS RAY,

 Plaintiff,

v.

MARK MCKINLEY,
CLAUDE BROWN, JR.,
MARK KOCHAVAR,
PAYSTR, LLC,
PAYSTATION HOLDINGS, LLC, and
PROSPEROUS VENTURES 360, LLC,

 Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Cyrus Y. Chung, United States Magistrate Judge.**

 Defendants Mark McKinley, Claude Brown, Jr., Mark Kochavar, Paystr, LLC ("Paystr"), PayStation Holdings, LLC, and Prosperous Ventures 360, LLC ("PV"), move for dismissal of this case, contending, among other things, that venue is improper. ECF No. 13. Ultimately, because the parties have a valid forum-selection clause, which directs the parties to litigate disputes in a state or federal court in Michigan, the Court **RECOMMENDS** that the motion be **GRANTED IN PART** and that the case be transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

### BACKGROUND

 When considering a "transfer [of] venue under § 1404(a), the court accepts as true all well-pleaded allegations in the complaint, unless contradicted by appropriate evidence put on by the party moving to transfer." *Delta Pegasus Mgmt., LLC v. Netjets Sales, Inc.*, No. 2:21-cv-

00393-RJS-DAO, 2022 WL 4536757, at *6 (D. Utah. Sept. 28, 2022). A court may also "consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011). Consideration of the complaint and undisputed materials the defendants submit points to two main sets of events.

First, in 2021 or 2022, the plaintiff began working for the defendants as a 1099 contractor. ECF No. 10 ¶ 23. The plaintiff's contractor status originated from an Independent Contractor Agreement (the "Agreement") between Eight Saints LLC ("Eight Saints") and Paystr. ECF No. 13-1 at 2–3. In the Agreement, the parties stipulated that "any lawsuit or other court action or proceeding relating to, or arising out of, this Agreement shall be instituted only in the state or federal court of proper jurisdiction in the State of Michigan." ECF No. 13-1 at 8. The plaintiff signed the Agreement on behalf of Eight Saints, which he owns. *Id.* at 2, 9. Thereafter, the plaintiff commenced projects at the defendants' behest, lured by the potential of becoming a permanent employee. ECF No. 10 ¶¶ 18, 30. Although he completed these projects and was promised remuneration for his work, the defendants did not pay him fully. *Id.* ¶¶ 30, 45–50. Specifically, the plaintiff earned $286,350 — $186,350 for work performed and $100,000.00 from an earned bonus — but the defendants paid him only $32,600.00. *Id.* ¶¶ 50, 54, 58–60. Based on these facts, the plaintiff asserts claims for breach of contract, unjust enrichment, promissory estoppel, declaratory judgment, violations of the Colorado Wage Claim Act, violations of the Fair Labor Standards Act, negligence, and fraudulent misrepresentation (the "Labor Claims"). *Id.* ¶¶ 74–110, 130–136.

Second, STRT Fund, LP ("STRT"), of which the plaintiff is managing partner, loaned defendant PV, a reincarnation of Paystr formed after Paystr had difficulties with the Securities

and Exchange Commission, $210,000.00 to fund a startup. *Id.* ¶¶ 13, 33–36, 63. But after discovering that the supposedly funded startup did not exist, the plaintiff, on behalf of STRT, demanded that the funding be returned. *Id.* ¶¶ 68–71. PV has only returned $9,600.00 of the $210,000.00. *Id.* ¶ 115. Based on these facts, the plaintiff asserts civil theft, conversion, and corporate veil-piercing claims (the "Theft Claims"). *Id.* ¶¶ 11–129.

Following attempts to recover his unpaid earnings and STRT's loan, the plaintiff commenced this action on July 10, 2024. *Id.* ¶¶ 59, 60, 71; *see* ECF No. 1. He amended his complaint once as of right, *see* ECF No. 10; Fed. R. Civ. P. 15(a)(1), and this Motion followed.

## ANALYSIS

Pointing to the Agreement's forum-selection clause, the defendants request dismissal for lack of venue under Fed. R. Civ. P. 12(b)(3). ECF No. 13 at 10. But "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Instead, "the clause may be enforced through a motion to transfer under § 1404(a)." *Id.* Section 1404(a), in turn, provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court may address such transfer even without a motion. *Friends of the Norbeck v. U.S. Forest Serv.*, No. 10-CV-2164-AP, 2010 WL 4137500, at *2 (D. Colo. Oct. 18, 2010). Because the issue of transfer is dispositive, the Court addresses it here.

The defendants do raise an issue of personal jurisdiction, ECF No. 13 at 5–8, and courts typically address jurisdictional issues first. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). But "[a] district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of

3

convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). And given that "[s]ection 1404(a) is merely a codification of the doctrine of *forum non conveniens*," *Atl. Marine Constr. Co.* 571 U.S. at 60, courts have regularly found that personal jurisdiction questions need not be resolved to address section 1404(a) transfer. *BSN Med., Inc. v. Am. Med. Prods., LLC*, No. 3:11-CV-92-GCM-DSC, 2012 WL 171269, at *2 (W.D.N.C. Jan. 20, 2012) (citing *Boyd v. Koch Foods*, No. 5:10-CV-349-D, 2011 WL 2413844, at * 2 (E.D.N.C. June 10, 2011)); *see Dupray v. Oxford Ins. Co. TN LLC*, 645 F. Supp. 3d 1095, 1099–1100 (D. Colo. 2022); *Martire v. Brinkley*, No. CV 12-970 (RC), 2012 WL 13046337, at *1 (D.D.C. Aug. 29, 2012) ("Courts interpreting *Sinochem* have since held that motions to transfer may be granted without first resolving any jurisdictional questions." (citing *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009))).

Where, as here, section 1404 transfer is based on a forum-selection clause, courts engage in a two-part analysis. First, a court must determine whether "transfer is based on [] 'an applicable, mandatory, valid, and enforceable forum-selection clause.'" *Dupray*, 645 F. Supp. 3d at 1101 (quoting *Carr v. Wells*, No. 20-cv-03319-PAB-SKC, 2022 WL 910953, at *4 (D. Colo. Mar. 28, 2022)); *see id.* at 1102. If it is, a court turns to a set of factors balancing the convenience of the parties and witnesses and the interests of justice modified to account for the existence of the clause. *Atl. Marine Constr. Co.*, 571 U.S. at 62–65. "'When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause,' and '[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.'" *Dupray*, 645 F. Supp. 3d at 1101 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 62). This case passes both steps.

4

*Forum-Selection Clause*

The forum-selection clause here is valid, enforceable, applicable (at least in significant part), and mandatory.

To begin, "[f]orum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Here, the parties contractually bargained to resolve this dispute in Michigan. Nor does the plaintiff contend otherwise; he does not address the forum-selection clause at all.

Instead, the closest he comes is arguing that the Agreement's arbitration clause does not apply because he brings this action in his personal capacity but signed the Agreement as Eight Saints' principal. ECF No 19 at 4. Mindful of the obligation to construe pro se plaintiff's pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," *Nocera v. Colorado Dep't of Regul. Agencies*, No. 24-CV-02607-NYW-CYC, 2025 WL 1144748 (D. Colo. Apr. 18, 2025) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), this same logic could be applied to the forum-selection clause. Even so, it cannot carry the plaintiff's burden. "Non-signatories to a contract are subject to its valid forum selection clause if they, or the claims they bring, are 'closely related to the contractual relationship.'" *PFC Payment Sols., LLC v. Element Payment Servs., Inc.*, No. 12-CV-01472-CMA-MJW, 2012 WL 3264305, at *3 (D. Colo. Aug. 10, 2012) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)). Here, the plaintiff signed the Agreement on behalf of a company he owns; he therefore was "'closely related' to the dispute such that it becomes

5

foreseeable that [he] will be bound" by the clause's terms. *Tin Giant, LLC v. Atari VCS, LLC.*, No. 1:20-cv-00911-SKC, 2022 WL 911130, at *3 (D. Colo. Mar. 29, 2022). By such logic, "courts have applied forum-selection clauses to a company's officers and directors." *Id.* (citing *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1211 (D.N.M. 2015). So it is here: the plaintiff is bound by the forum-selection clause of the Agreement he signed as principal of Eight Saints.

The clause is also enforceable. "A forum-selection clause 'should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Dupray*, 645 F. Supp. 3d at 1104 (quoting *M/S Bremen*, 407 U.S. at 15). The plaintiff makes no argument that the clause contravenes strong public policy. It is true that the plaintiff asserts a violation of the Colorado Wage Claim Act, ECF No. 10 ¶¶ 95–99, and that *Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996), declined to enforce an out-of-state forum-selection clause on the grounds that it "would contravene the strong public policy embodied in the Colorado Wage Claim Act." But that decision came "long before *Atlantic Marine*" and "[t]o the extent *Morris* would make non-enforcement of forum selection clauses routine rather than exceptional . . . , that holding cannot be reconciled with *Atlantic Marine* and must yield to the decision of the Supreme Court." *Bowers v. Tension Int'l, Inc.*, No. 15-cv-02734-WJM-KLM, 2016 WL 3181312, at *4 (D. Colo. June 8, 2016). The presence of the Colorado Wage Claim Act claim alone, then, does not render the clause unenforceable.

The clause is mostly applicable as well. It uses "relating to, or arising out of" language, ECF No. 13-1 at 8, which is broad in scope. *See Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1206 (Colo. App. 2018); *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*,

6

742 N.W.2d 409, 421 (Mich. Ct. App. 2007). Here, the Labor Claims all center upon the defendants' failure to pay the plaintiff for services, relating to the Agreement's terms. Indeed, the Agreement existed to compensate Eight Saints for developing business for Paystr. ECF No. 13-1 at 5–6. The plaintiff then performed services and asserts that he was not paid for those services. ECF No. 10 ¶¶ 18–30. While he asserts that the Agreement does not apply because it was limited in duration, ECF No. 19 at 4, this argument fails. By its own terms, the Agreement may be extended if the parties mutually agree, and such extension does not require a memorialization in writing. ECF No. 13-1 at 5. And the plaintiff admits that he performed services beyond March 2022 — when he claims the Agreement expired — expecting compensation, which is what the Agreement promises. ECF No. 10 ¶ 46.

To be sure, the Theft Claims' connection to the Agreement is less clear. Regardless, as explained *infra*, transfer of the entire case is appropriate instead of dividing it up piecemeal.

Finally, the clause is mandatory. "To be mandatory, a forum selection clause must contain clear and unequivocal language demonstrating the parties' intent to establish an exclusive forum." *West v. Strike Tax Advisory, LLC*, No. 23-CV-00669-GPG-MEH, 2023 WL 3976431, at *2 (D. Colo. May 23, 2023) (citing *QFA Royalties, LLC v. Majed*, No. 06-cv-01506-LTB-MEH, 2006 WL 3500618, at *2 (D. Colo. Dec. 1, 2006)). It does here. The forum selection clause is explicit that lawsuits arising out of or related to the Agreement "shall be instituted only in the state or federal court of proper jurisdiction in the State of Michigan." ECF No. 13-1 at 8. No more is necessary to make it mandatory. *See, e.g.*, *Cattleman's Choice Loomix, LLC v. Heim*, No. 11-cv-00446-WYD-CBS, 2011 WL 1884720, at *2 (D. Colo. May 18, 2011) (holding that forum-selection clause stating that "[a]ll actions or proceedings arising directly or indirectly from

7

the Agreement *shall be litigated only* in the State or Federal Courts having situs in or in courts from the County of Weld, State of Colorado" was mandatory).

Accordingly, a valid, enforceable, and mandatory forum-selection clause applies here, and analysis proceeds to the second step.

*§ 1404(a) Transfer Factors*

At the second step, a district court analyzes a modified set of factors. "For a typical motion under § 1404(a), . . . courts should resolve the motion by considering a number of public- and private-interest factors: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4) the possibility of obtaining a fair trial; and (5) all other considerations of a practical nature that make a trial easy, expeditious and economical." *Dupray*, 645 F. Supp. 3d at 1101 (quoting *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006)); *see Atl. Marine Constr. Co.*, 571 U.S. at 62. This analysis, however, changes when "an applicable, mandatory, valid, and enforceable forum-selection clause" exists because it "represents the parties' agreement as to the most proper forum." *Dupray*, 645 F. Supp. 3d at 1101 (quoting *Carr*, 2022 WL 910953, at *4). The analysis changes in three ways.

First, "the plaintiff's choice of forum merits no weight" because "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine Constr. Co.*, 571 U.S. at 63. Second, a court does "not consider arguments about the parties' private interests" and may only "consider arguments about public-interest factors," though these "factors will rarely defeat a transfer motion." *Id.* at 64. The "[p]ublic-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home

8

with the law.'" *Id.* at 63 n.6 (brackets and internal quotation marks omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Third, "transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* The result of these modifications is that "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66.

So it is here: the parties bargained for a court in Michigan, and there is little reason to depart from that choice. The case arises from a purported breach of contract and lack of payment from Michigan entities and individuals, *see* ECF No. 10 ¶¶ 3–8, meaning there is no specific interest in deciding this case in Colorado. The balance especially favors transfer considering the plaintiff's "failure to show why this is an unusual case," *Dupray*, 645 F. Supp. 3d at 1109, given that "it is Plaintiff's burden to show why the public-interest factors weigh against transfer." *Lewis v. Google, Inc.*, No. 19-CV-2387-WJM-KLM, 2019 WL 10749715, at *3 (D. Colo. Dec. 31, 2019). The plaintiff points to no "administrative difficulties" of litigating this case in Michigan. Accordingly, the parties should litigate in their agreed-upon forum. *See Schroll v. Dnsfilter, Inc.*, No. 24-CV-01895-CNS-STV, 2024 WL 5356884, at *3 (D. Colo. Dec. 9, 2024) (concluding that it "does not contravene public policy to hold the parties to their agreed-upon forum" when the case was not overly complex, there was no particular local interest in having the case decided in Colorado, and were no "administrative difficulties.").

Although the defendant does not designate a particular court to be the transferee court, the Eastern District of Michigan is most appropriate "because [the plaintiff] chose a federal forum here" and the arbitration clause references Bay City, Michigan, ECF No. 13-1 at 9, which is in the Eastern District of Michigan. *Dupray*, 645 F. Supp. 3d at 1109 n.10 (quoting *Oceanside*

9

*Ten Holdings.com, LLC v. Mktg, Inc.*, No. 17-cv-02984-MSK-KMT, 2018 WL 2277004, at *3 n.1 (D. Colo. May 18, 2018)).

The short of it is that the parties bargained to resolve this dispute in Michigan, so that is where they should do so. Having determined that transfer to the Eastern District of Michigan is appropriate, it is unnecessary to address the defendants' arguments regarding personal jurisdiction and failure to state a claim. *See Dupray*, 645 F. Supp. 3d at 1102; *see also Nw. Bldg. Components, Inc. v. Adams*, No. 22-cv-00790-CMA-KLM, 2022 WL 1689293, at *6 (D. Colo. May 26, 2022) (analyzing only transfer and not addressing personal jurisdiction).

<u>The Theft Claims</u>

As mentioned above, the forum-selection clause may not apply to the Theft Claims, given that they arise out of a separate loan. If true, in theory, one could argue that the Theft Claims should be severed from the Labor Claims, with the former staying here and the latter traveling to Michigan. *See* Fed. R. Civ. P. 21. But "[s]ection 1404(a) only authorizes the transfer of an entire action, not individual claims." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991) (citing *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)). As such, such splitting before transfer is rare. *See id.* at 1518–19. And here, severance is a "wholly unappealing alternative" given that the defendants are "centrally involved in the litigation." *United States v. Douglas*, 626 F. Supp. 621, 625 (E.D. Va. 1985). After all, the defendants in the Theft Claims are McKinley, Brown, Paystr, and PV — all of whom are named throughout the Amended Complaint, including in the Labor Claims. ECF No. 10. Severance, then, would only produce needlessly duplicative litigation, and transfer of the entire case is proper.

10

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that the defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) or, Alternatively, Motion to Compel Arbitration, ECF No. 13, be **GRANTED in part** and that the matter be **TRANSFERRED** to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).[1]

Respectfully submitted this 30th day of May, 2025, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>